MELVIN HERSCH AND FLORENCE HERSCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hersch v. Commissioner
Docket No. 18049-90.
United States Tax Court
T.C. Memo 1992-222; 1992 Tax Ct. Memo LEXIS 256; 63 T.C.M. (CCH) 2763; April 15, 1992, Filed *256 An order denying petitioner's motion will be issued. Sidney Eagle, for petitioners. Wendy S. Sands, for respondent. BEGHE
BEGHE
MEMORANDUM OPINION BEGHE, Judge: This opinion deals with an "Application For An Order of Protection" by Melvin Hersch (petitioner). We will treat petitioner's submission as a motion under Rule 103. [1]
Petitioner wishes to avoid answering almost all of respondent's requests for admissions.[2] Respondent argues that the matters for which she seeks admissions were established as facts in two cases in which petitioner was a party. In United States v. Philatelic Leasing, Ltd., 601 F. Supp. 1554 (S.D.N.Y. 1985), affd. 794 F.2d 781 (2d Cir. 1986), the District Court and the Court of Appeals held that the Government was entitled to an injunction under section 6700 against further "stamp master" tax shelter activities by petitioner. *257 In Hersch v. United States, 685 F. Supp. 325 (E.D.N.Y. 1988), another District Court held that petitioner was not entitled to a complete refund of a gross overvaluation penalty under section 6700, but reduced the amount of the penalty from $ 234,600 (the gross income derived from the tax shelter activity) to $ 23,400 (10 percent of the gross income derived from the tax shelter activity).
*258 In her notice of deficiency in this case, respondent determined that a successor entity to Philatelic Leasing -- Charterhouse Leasing, Ltd. -- made distributions to petitioner of $ 64,600 in 1982 and $ 104,000 in 1983, that the distributions constituted taxable income to petitioner, that petitioner did not report the income, and that failure to report the income constituted fraud. Respondent states that she requested the admissions to avoid protracted controversy on issues that had previously been litigated. Petitioner makes three basic arguments for the proposition that the requests to admit were improper. First, petitioner complains that the requests have not "been limited to matters of a factual nature". For instance, petitioner objects to respondent's request that he admit "Philatelic Leasing was thinly capitalized throughout its existence." Petitioner contends that the request improperly requires him to draw a legal conclusion regarding the capitalization of Philatelic Leasing, a company in which petitioner had an interest. Petitioner also objects to this request to admit: "The transfer of an uncollateralized loan to petitioner rendered Philatelic unable to pay its tax *259 liabilities." Petitioner argues that the terms "transfer", "loan", and "uncollateralized" either are ambiguous and thus open to many interpretations, or are technical words whose meaning can be divined only by the Court. Petitioner makes similar arguments regarding the terms "arm's length", "tax shelter", and "purported leasing". Petitioner states that answering the requests for admission "will result in conclusions of law and are such that they can only be made by the ultimate trier of fact". Petitioner asserts that the admissions are improper because they go to "the heart of the dispute". Second, petitioner asserts that respondent should have used some other method of discovery to learn petitioner's position on these issues. Finally, petitioner contends that the matters covered by the requests are not relevant. Petitioner's arguments are crystallized by the following passage from his motion papers: The purpose of a notice to admit is to attempt to eliminate from contention those factual matters which can be readily demonstrated and about which there can be no dispute. It may not be used in lieu of other disclosure devices and it may not be used to relate to technical, detailed *260 and scientific matters which are the proper subject of an expert witness.
Petitioner cites no authority for this proposition. [3] Our reading of the authorities is that petitioner's statement of the law is oversimplified and misleading. Rule 90(a) states that a party may seek an admission regarding "statements or opinions of fact or of the application of law to fact" (emphasis added). A notice to admit may relate to any matter, factual or not, disputed or not, provided the request does not ask for admission of an abstract legal proposition. Estate of Allensworth v. Commissioner, 66 T.C. 33 (1976). Admissions may be used, within the limits of Rule 90 itself, even when other discovery devices are available. Id. We have found no binding authority that places limitations on the subject matter of a request for admission, other than that it may not ask for an admission about abstract principles of law and may not be overly burdensome. Finally, the Rule itself states that an objection to a request to admit may not be based on relevance alone. Rule 90(c). *261 The permissible scope of requests to admit under Rule 90 (matters that are "not privileged and are relevant") is as broad as the permissible scope of discovery. See Rule 70(b). Petitioner makes the somewhat garbled argument that a request for admission may ask a party to admit only facts, or the party's opinion about the law, or the party's opinion of fact or law. Whatever petitioner means by this argument, the disjunctive alternatives in Rule 90(a) broaden, not narrow, the permissible scope of a request for admission. Estate of Allensworth v. Commissioner, supra at 37-38. That is, a request may ask a party to admit (1) that a fact is true, (2) that the party holds a certain opinion about a fact, (3) that a certain application of law to a certain factual situation is correct, or (4) that the party holds a certain opinion about the application of law to a certain factual situation. "Technical, detailed and scientific matters," contrary to petitioner's claim, may be the subject of a request to admit. Lumpkin v. Meskill, 64 F.R.D. 673 (D. Conn. 1974) (plaintiff permitted to request that defendant admit validity of statistical techniques *262 employed by plaintiff's expert). Indeed, if the parties can resolve technical issues before trial and avoid the expense of presenting and rebutting expert testimony, the purpose of the Rule is fulfilled. Rule 90 prohibits requests for admission regarding abstract legal questions. See Estate of Allensworth v. Commissioner, supra at 38. For example, it would have been improper for respondent to request that petitioner admit: "A company is thinly capitalized when its debts account for such a large proportion of its capital structure that the amount of its equity capital is negligible or negative." Such questions of law are exclusively within the province of the Court. It is not improper, however, to request that a party admit, e.g., that a particular corporation is thinly capitalized. This point is illuminated by the advisory note to Rule 36(a) of the Federal Rules of Civil Procedure, upon which our Rule 90(a) is based: As revised, * * * [rule 36(a)] provides that a request may be made to admit any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact. It thereby eliminates the requirement *263 that the matters be "of fact." This change resolves conflicts in the court decisions as to whether a request to admit matters of "opinion" and matters involving "mixed law and fact" is proper under the rule. * * * Not only is it difficult as a practical matter to separate "fact" from "opinion," * * * but an admission on a matter of opinion may facilitate proof or narrow the issues or both. An admission of a matter involving the application of law to fact may, in a given case, even more clearly narrow the issues. * * * In McSparran v. Hanigan, * * * [225 F. Supp. 628 (E.D. Pa. 1963)], plaintiff admitted that "the premises on which said accident occurred, were occupied or under the control" of one of the defendants, 225 F. Supp. at 636. This admission, involving law as well as fact, removed one of the issues from the lawsuit and thereby reduced the proof required at trial. The amended provision does not authorize requests for admissions of law unrelated to the facts of the case. [28 U.S.C. 640, Fed. R. Civ. P. 36(a), advisory committee's note, 1970 amendment (1988).]
This passage, which we quoted with approval in Estate of Allensworth v. Commissioner, supra at 37-38, *264 prefigured the result we reached there and the result we reach in this case. See also Rule 90(a) explanatory note, 60 T.C. 1114-1115. Petitioner's argument that the requests are objectionable because they cover findings that "can only be made by the ultimate trier of fact" suggests an exception that would swallow the rule. Everything that can be admitted is exclusively within the fact finder's competence until an admission makes the matter "conclusively established". Rule 90(f). By petitioner's standard, all requests for admissions are impermissible invasions of the fact finder's turf. The point of admissions is to avoid wasting the fact finder's time with issues that the parties can resolve on their own. Even if an issue is disputed, that is no reason to object. As the Advisory Committee Notes to rule 36(a) of the Federal Rules of Civil Procedure say: The proper response in such cases is an answer. The very purpose of the request is to ascertain whether the answering party is prepared to admit or regards the matter as presenting a genuine issue for trial. In his answer, the party may deny, or he may give as his reason for inability to admit or deny *265 the existence of a genuine issue. The party runs no risk of sanctions if the matter is genuinely in issue, since Rule 37(c) [equivalent to Tax Court Rule 104(c)] provides a sanction of costs only when there are no good reasons for a failure to admit. [28 U.S.C. 640, Fed. R. Civ. P. 36(a), advisory committee's note, 1970 amendment (1988).]
As for petitioner's complaint that some of the requests go to central issues in the case, there is authority for the proposition that a request to admit under the Federal Rules of Civil Procedure may not involve central or ultimate facts or attempt to dispose of the entire case. See, e.g., Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., 130 F.R.D. 92 (N.D. Ind. 1990). However, we believe that the interpretation that best effectuates the purposes of our Rule is that no issue or fact is specially immune from a request for admission. "There is no basis in the rule for these comments [that Rule 36 of the Federal Rules of Civil Procedure is not intended to be used to cover the entire case] and no discernible reason for such a limitation." 8 Wright & Miller, Federal Practice & Procedure sec. 2254 (1970 & Supp. 1991). *266 "It was precisely for the purpose of forcing the parties to eliminate such [a central] issue unless there is some substantial reason [for] supposing that it might be resolved in their favor that Rule 36 was adopted." 4A Moore's Federal Practice par. 36.04[8] (1992). These comments apply with equal force to Rule 90. Petitioner's remedy is contained in Rule 90(c): A party who considers that a matter, of which an admission has been requested, presents a genuine issue for trial may not, on that ground alone, object to the request; such party may, subject to the provisions of paragraph (g) of this Rule, deny the matter or set forth reasons why such party cannot admit or deny it. An objection on the ground of relevance may be noted by any party but is not to be regarded as just cause for refusal to admit or deny.
If petitioner disagrees with the assertions in the requests for admission, or if he lacks sufficient information to admit and has made a reasonable inquiry to obtain the information he requires, he may deny the assertions or explain his inability to admit or deny. We will grant petitioner 30 days from the date of this opinion to submit answers to the disputed *267 requests to admit. An order denying petitioner's motion will be issued.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice & Procedure. All section references are to the Internal Revenue Code.↩
2. Petitioner made a qualified admission of request No. 1 ("Petitioner was president of Philatelic Leasing, Ltd. (hereinafter referred to as Philatelic or Philatelic Leasing) during the years in issue."); petitioner admitted that he was president of Philatelic from Apr. 20, 1982, to Dec. 31, 1983. Petitioner admitted the following: 8. (a) Petitioner received a salary from Philatelic in both 1982 and 1983. * * * 12. The petitioner's income tax returns for the taxable years 1982 and 1983 were filed no earlier than April 15, 1983 and April 15, 1984, respectively. 13. Petitioner executed extensions of time to assess tax, copies of which were attached to respondent's answer in this case.
Petitioner objects to the following requests to admit: 2. Philatelic promoted a tax shelter involving the purported leasing of stamp masters. 3. Philatelic purported to purchase the stamp masters from Hambrose Stamps, Ltd. for prices ranging from $ 150,000 for a two-stamp master to $ 800,000 for an eight-stamp master. 4. The United States brought suit against the petitioner to enjoin his promoting the abusive Philatelic Leasing tax shelter. The injunction was granted based upon the finding that the Philatelic Leasing stamp promotion was a scheme to promote tax fraud. United States v. Philatelic Leasing, Ltd., 601 F. Supp. 1554 (S.D.N.Y. 1985)aff'd, 794 F.2d 781 (2d Cir. 1986). 5. Philatelic Leasing prepared an offering memorandum which contained representations that individuals who purchased interests in stamp masters would be entitled to certain income tax deductions and investment tax credits. The memorandum estimated that the federal tax benefits would be four times the cash invested. 6. Philatelic Leasing did not deal at arm's length with Hambrose Stamps. 7. Philatelic Leasing was thinly capitalized throughout its existence. (a) Philatelic Leasing was set up so that seventy percent of its gross receipts were turned over to Hambrose. (b) Of the remaining thirty percent of its gross receipts, approximately twenty-six percent of its gross receipts were required to be paid as commissions to the salesmen who sold it to individual investors. (c) Of the approximately $ 16 million received by Philatelic, only approximately $ 600,000 was left over to pay salaries, advertising and other costs. United States v. Philatelic Leasing, Ltd., 794 F.2d 781 (2d Cir. 1986). (d) The transfer of an uncollateralized loan to petitioner rendered Philatelic unable to pay its tax liabilities.
8. * * * (b) In addition, from 1982 through 1984, petitioner removed certain "commissions" from Philatelic. (c) In addition, petitioner removed $ 63,600 from Philatelic in 1982 and $ 105,000 from Philatelic in 1983, which amounts were referred to on Philatelic's books as loans. (d) Petitioner sold no interests in Philatelic which would entitle him to commissions.
9. (a) The amounts referred to in paragraphs 8.(a) through (c) were not loans. (b) Neither petitioner nor the corporation treated the amounts as loans. (c) No loans [sic.] agreements were made; no collateral was provided; no interest was paid; and no collection efforts were made. (d) None of the corporate records give any sign that the loans were authorized.
10. Petitioner did not report the $ 63,600 in 1982 or the $ 105,000 in 1983 on his federal income tax returns. 11. Said transfers, as set forth in paragraphs 8.(a) through (c) were made to the petitioners without any consideration. * * * 14. Petitioner maintains that he received loans from Philatelic for which loans there was no collateral.
The requests for admissions were served by mail on petitioner on August 27, 1991. Petitioner responded by mail on October 3, 1991.↩
3. Petitioner seems to have confused the standard for taking judicial notice, Fed. R. Evid. 201(b)↩, with the test of the propriety of a request to admit.