CALZATURFICIO S.C.A.R.P.A. S.P.A., Plaintiff and Defendant–in–Counterclaim,

v.

FABIANO SHOE COMPANY, INC., Defendant and Plaintiff–in–Counterclaim,

and

Black Diamond Equipment, Ltd., Defendant–in–Counterclaim.

No. Civ.A.1999–12056–MLW.

United States District Court, D. Massachusetts.

June 14, 2001.

**34**

Howard L. Vickery, Jayni L. Edelstein, Cameron & Hornbostel, LLP, New York City, for Calzaturificio S.C.A.R.P.A. s.p.a.

Bruce Edmands, Mahoney, Hawkes & Goldings, Boston, MA, for Black Diamond Equipment, Ltd.

Mark C. O'Connor, Rich, May Bilodeau & Flaherty, Boston, MA, for Fabiano Shoe Co., Inc.

## MEMORANDUM AND SECOND [1] ORDER ON SCARPA AND BLACK DIAMOND'S JOINT EMERGENCY MOTION TO COMPEL, IMPOSE SANCTIONS AND AMEND THE COURT'S SCHEDULING ORDER (# 32)

COLLINGS, United States Chief Magistrate Judge.

### I. BACKGROUND [2]

Calzaturficio S.C.A.R.P.A. s.p.a. ("Scarpa"), an Italian company that manufactures

1. A First Order on Scarpa and Black Diamond's Joint Emergency Motion to Compel, Impose Sanctions and Amend the Court's Scheduling Order (# 44) was issued on May 22, 2001 and addressed most of the issues raised in the Motion to Compel. This Second Order thus addresses only the issues of Fabiano's purported failure to prepare its 30(b)(6) witnesses and the alleged misconduct of Fabiano's counsel during the 30(b)(6) depositions.

2. This Memorandum and Order recounts only those facts that are relevant for purposes of the instant discovery motion.

footwear, commenced a breach of contract action against Fabiano Shoe Company, Inc. ("Fabiano"), a Boston-based shoe distributor, to recover amounts allegedly due on unpaid invoices for footwear that Scarpa manufactured and delivered to Fabiano for distribution in the United States. (See generally Complaint # 1) Fabiano counterclaimed against Scarpa for breach of a claimed exclusive distributorship agreement dating back to 1981 and brought an action against Black Diamond Equipment, Ltd. ("Black Diamond"), a sports equipment manufacturer and distributor, for tortious interference. (Answer and Counterclaim # 4) The actions were consolidated in the United States District Court for the Southern District of New York and then transferred to the United States District Court for the District of Massachusetts. (Order from the United District Court for the Southern District of New York # 2) The case has been referred to the undersigned for the purposes of deciding the instant discovery motion. (Order of Referral # 40)

Fabiano and Scarpa did business with each other for over thirty years. (# 1, ¶¶ 1, 11) In its counterclaim, Fabiano claims that it had an exclusive distributorship agreement with Scarpa which Scarpa breached by distributing products to Black Diamond and wrongfully terminating Fabiano. (# 4, ¶¶ 6, 44) Further, Fabiano claims that by purchasing Scarpa products and distributing them in the United States, Black Diamond intentionally interfered with Fabiano's contractual relationship with Scarpa in violation of the exclusive distributorship agreement. (# 4, ¶¶ , 46, 52) Fabiano's claims are based on a two-page Italian document entitled "Convenzione" signed in June, 1981 by, *inter alia*, Andrew Fabiano, the founder of Fabiano, who died in 1992. (# 4, ¶¶ 42, 48) Michael and Edward Fabiano, Andrew Fabiano's sons, who started managing Fabiano in 1987, claim to have had no knowledge of the Convenzione until 1998, when Scarpa referenced it in its termination notice. (# 4, ¶¶ 48, 50)

Both Scarpa and Black Diamond noticed Rule 30(b)(6) depositions of Fabiano.[3] Eventually, those depositions took place on August 17–18, 2000, February 28–March 1, 2001 and March 26–27, 2001[4] with Michael and Edward Fabiano having been designated by Fabiano as the corporate representatives with knowledge of the topics listed in the 30(b)(6) deposition notices. Despite several requests that Fabiano do so, Fabiano did not make a written designation of the witnesses it intended to produce to testify at the 30(b)(6) depositions. (Affidavit of Bruce W. Edmands # 35, ¶ 4)

In their Motion to Compel and supporting memorandum and affidavits, Scarpa and Black Diamond assert, *inter alia*, that Michael and Edward Fabiano (the "Fabiano sons") were not adequately prepared to testify regarding many of the topics listed in the 30(b)(6) notices. Moreover, Scarpa and Black Diamond complain that Mark D. O'Connor, Esquire, Fabiano's counsel, acted improperly during the 30(b)(6) depositions by, for example, coaching the witnesses, making improper objections and verbally attacking opposing counsel.

Fabiano's counsel, on the other hand, argues in his Opposition to the Motion to Compel, that the Fabiano sons already have been deposed for nearly 37 hours, that the Fabiano sons are the only witnesses available who have any knowledge of the subject matters of this litigation and can speak for the Fabiano company, and that the Fabiano sons have no more knowledge of the documents that have been produced other than what can be learned from reading them. This Court agrees with Scarpa and Black Diamond that the Fabiano sons were not properly prepared to be designated at 30(b)(6) witnesses and that Fabiano's counsel stepped over the line of acceptable behavior during the depositions. Specific examples of the inadequate preparation of the Fabiano sons and the improper behavior of Fabiano's counsel, as well

---

3. Those deposition notices included a list of topics upon which the deponents would be questioned. It is unnecessary to examine the list of topics in detail. Where necessary below, certain topics are addressed more closely.

4. The scheduling, rescheduling and deliberate delay that took place regarding the dates of the 30(b)(6) depositions is not relevant to the instant motion and thus need not be recounted here.

as the appropriate remedy for these discovery violations, are addressed below.

## II. ANALYSIS

### A. Witnesses at 30(b)(6) Depositions

Scarpa and Black Diamond cite to numerous examples in support of their argument that the Fabiano sons were not properly prepared to be designated as 30(b)(6) witnesses testifying on behalf of Fabiano. The deposition transcripts provide ample support for Scarpa and Black Diamond's assertions.

First, for example, when asked if he was speaking on behalf of the Fabiano company, Edward Fabiano responded that he "can't represent what the company knew. I can only represent what I knew at that time." (Affidavit of Jayni L. Edelstein # 34, ¶ 22 and Ex. G thereto at 99). Fabiano's counsel agreed with Edward Fabiano, stating that Mr. Fabiano "has the knowledge he has", that he has "absolutely no obligation whatsoever to go out and educate himself" and that he has "no obligation to sit there and read through all the [documents] in preparation for a deposition." (# 34, Ex. G at 101–04). At the deposition of Michael Fabiano, Fabiano's counsel took a similar position, stating that Michael Fabiano would only testify as to what he had "firsthand knowledge about" and if the Fabiano sons "don't have knowledge, they don't have knowledge." (# 34, Ex. I at 19–21)

■ Fabiano's counsel is quite simply wrong in his assertion that the Fabiano sons did not have a duty to educate themselves about the 30(b)(6) topics. Indeed, the law is well-established that a 30(b)(6) deponent does have an affirmative obligation to educate himself as to the matters regarding the corporation.

Rule 30(b)(6) explicitly requires [a company] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process. . . . [P]reparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business. . . . [A company] does not fulfill its obligations at the Rule 30(b)(6) deposition by stating that it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available. . . .

*United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C., 1996), *aff'd* 166 F.R.D. 367 (M.D.N.C., 1996). *See also Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 504 (D.Md., 2000) ("Upon notification of a deposition, the corporation has an obligation to investigate and identify and if necessary prepare a designee for each listed subject area and produce that designee as noticed."); *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D.Neb., 1995) (citing *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C., 1989)) ("If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation."); *Buycks–Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 343 (N.D.Ill., 1995) (stating that the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.); *Securities and Exchange Commission v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y., 1992) (citing *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Authority*, 93 F.R.D. 62, 67 (D.P.R., 1981)) ("under Rule 30(b)(6), the deponent 'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters.'"); ABA Civil Discovery

Standards (Aug. 1999), § 19(f) ("Counsel for the [corporation] should prepare the designated witness to be able to provide meaningful information about any designated area(s) of inquiry.").

It is obvious that the Fabiano sons were not properly prepared to testify as 30(b)(6) representatives of the Fabiano company.[5] Apparently, neither of the Fabiano sons reviewed any Fabiano company records or correspondence in preparation for being deposed. Michael Fabiano testified that the sole company document he reviewed was a 1998 "document between Scarpa and Black Diamond." (# 34, Ex. J at 65) [6] Similarly, Edward Fabiano reviewed only two documents—an email and a handwritten agreement. (# 34, Ex. H at 88) Fabiano's counsel defends his clients' failure to review documents in preparation of being deposed, creatively arguing that to the extent that Fabiano records exist, "they have been produced and Michael and Edward Fabiano have no more knowledge about such records and the subject matter of such records other than what can be learned from reading them" and that "[t]here is nothing that Michael and Edward can do better to prepare themselves for their deposition." (Opposition # 37 at 15)

 This argument is disingenuous at best. The Fabiano sons could have, and indeed were obligated to, review all corporate documentation that might have had a bearing on the 30(b)(6) deposition topics. The party responding to a 30(b)(6) deposition notice "must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 639 (D.Minn., 2000) (citing *Taylor, supra,* 166 F.R.D. at 361); *see also Bank of New York v. Meridien BIAO Bank Tanzania, Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y., 1997) (deponent must be prepared "to the extent matters are reasonably available, whether from documents, past employ-

ees, or other sources."). Even if the documents are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed. *See Prokosch, supra,* 193 F.R.D. at 638 ("the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation that is involved in litigation, can be fully and fairly explored."). Such preparation is necessary because the "individuals so deposed are required to testify to the knowledge of the corporation, *not* the individual." *Poole, supra,* 192 F.R.D. at 504; *see also Prokosch, supra,* 193 F.R.D. at 638 (a corporation must prepare its deponents "so that they may give complete, knowledgeable and binding answers on behalf of the corporation."); *Taylor, supra,* 166 F.R.D. at 361 ("the designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions. . . . The corporation must provide its interpretation of documents and events.").

Without having a witness or witnesses who can testify so as to bind the corporation, the deposing party is left at an unfair disadvantage, having no understanding of what the corporation's position is as to many areas of inquiry. Such is the case here. Scarpa and Black Diamond were left, as a result of the Fabiano sons' uninformative answers, without much knowledge about what the Fabiano company's position would be at trial as to many topics that are crucial to the instant litigation.

For example, the following interchange took place with Michael Fabiano with regard to the question of why Scarpa terminated Fabiano, an issue that is clearly relevant to the ongoing litigation:

> Q. I'm trying to understand your words, sir.

---

5. Moreover, it is obvious that the Fabiano sons either had no understanding of what their roles as 30(b)(6) witnesses entailed or they decided deliberately to disregard their obligation. For example, when asked about the company's knowledge about a certain topic, Edward Fabiano responded, "[A]sk the company, I'll go get

you a business card and you can talk to that." (# 34, Ex. L at 191).

6. In preparing for his deposition, he also reviewed the list of 30(b)(6) deposition topics.

A. Well, I explained to you the series of events that took place. You can come up with your own version of what you think they mean.

Q. I'm trying to understand what the company's position is.

A. Why don't we let a jury decide what the company's position was?

Affidavit # 34, Ex. L at 230.

Michael Fabiano's answer here, as in many other instances throughout his deposition, is insufficient under Rule 30(b)(6). As a result of Michael Fabiano's evasive answers, Scarpa and Black Diamond are put in the untenable position of having no idea what the company position is as to why Scarpa terminated Fabiano. This type of disadvantage is not what the Federal Rules contemplate. Indeed, one of the purposes of the Federal Rules in general and Rule 30(b)(6) specifically is to prevent this type of "sandbagging" of a party. *See Taylor, supra,* 166 F.R.D. at 362.

Fabiano's counsel argues that the Fabiano sons could not have done more than they did to prepare for their depositions. However, it is not as if Fabiano's counsel had no recourse if, as he argues, there was no way for his designated 30(b)(6) witnesses to educate themselves as to certain areas of inquiry. First, Fabiano's counsel could have given advance notice to Scarpa and Black Diamond about which topics the Fabiano sons would be able to testify. *See generally* ABA Civil Discovery Standards at § 19(g) ("Whenever an officer, director or managing agent of an entity is served with a deposition notice ... that contemplates giving testimony on a subject about which he...has no knowledge or information, that individual may submit, reasonably before the date noticed for the deposition, an affidavit...so stating and identifying a person within the entity having knowledge of the subject matter."). In this case, because Fabiano is defunct, there are few witnesses available to testify on behalf of the company. However, if, after reviewing all information known or reasonably available to the company, the Fabiano sons still would not be able to testify as to some of the 30(b)(6) topics and there

were no other available witnesses who could do so, Fabiano should have so informed Scarpa and Black Diamond well in advance of the scheduled depositions.[7] Instead, Scarpa and Black Diamond were forced to waste time and money and endure evasive, unhelpful and often sarcastic answers in response to their questioning.

■ Fabiano argues that with regard to at least one area of inquiry—operating losses of Fabiano—the Fabiano sons could not testify because the tax returns in question were prepared by professional accountants and that the Fabiano sons did not have an understanding of Fabiano's tax issues. This may well be the case. However, the Fabiano sons were still required to review all documentation and to educate themselves to the extent possible on all of the 30(b)(6) topics. Certainly, the obligation imposed by Rule 30(b)(6) is not infinite. If the Fabiano sons reviewed the available documentation and still would not have been able to give complete answers on behalf of Fabiano with respect to operating losses or other issues, and there were no other available witnesses who could do so, then Fabiano's obligations under Rule 30(b)(6) cease, since the rule requires testimony only as to "matters known *or reasonably available* to the organization." *Dravo, supra,* 164 F.R.D. at 76 (citing Fed. R.Civ.P. 30(b)(6)) (emphasis added).

Thus, it seems clear that Fabiano, through its 30(b)(6) deponents, had a duty in advance of the 30(b)(6) deposition to review all documents, including tax returns and related tax papers, that were "reasonably available." Neither Rule 30(b)(6) itself nor the Advisory Notes nor reported case law addressing the rule define the terminology "reasonably available." However, in a similar context— the production of documents pursuant to Fed.R.Civ.P. 34—responding parties are required to produce all documents that are in their control. "Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling,* 736 F.2d 650, 653 (11 Cir., 1984); *see also Alexander v. Federal*

---

7. In addition, if Fabiano deemed some of the 30(b)(6) topics to be objectionable for some reason, they could have moved the court for a protective order.

*Bureau of Investigation,* 194 F.R.D. 299, 301 (D.D.C., 2000) ("It is well-established that 'control', which is defined not as possession, but as the legal right to obtain documents on demand, is the test as to whether production is required."); *Prokosch, supra,* 193 F.R.D. at 636 ("Under Rule 34, 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a non-party to the action.") It therefore seems logical that the documents that are reasonably available are those documents that are in a party's control. In the instant case, this means that the Fabiano sons were required to review all documents (that had any bearing on the 30(b)(6) topics) that were in their control. By definition, such documents would include the tax-related documents because those documents, even if they were in the possession of Fabiano's accountant, were still in Fabiano's control because Fabiano had the legal right and the practical ability to obtain the documents from the accountant. Therefore, I find that the Fabiano sons, in preparing to be deposed as 30(b)(6) representatives of the company, had the obligation to review all documents that were in their control, including the tax returns and related documents that were in the physical possession of Fabiano's accountant.

Fabiano makes a similar argument regarding attorney's fees as it did for tax returns, asserting that it is unimportant that Michael Fabiano was unable "to testify from memory as to the amount of attorney fees and costs Fabiano has incurred in prosecuting its claims in this action for which it seeks recovery." (# 37 at 16) Again, Fabiano misses the point. Undoubtedly, there were documents available specifying the amount of attorneys' fees incurred which the Fabiano sons could have reviewed before the deposition. Those documents may have been in the possession of Fabiano's counsel, but based on my finding above, those documents (like the tax documents) were in the control of Fabiano because Fabiano had the legal right to obtain the documents, and thus the Fabiano sons should have reviewed them in order to edu-

cate themselves for the 30(b)(6) deposition. That they chose not to review the available documents is not Scarpa and Black Diamond's problem. "If the originally designated spokesman for the corporation lacks knowledge in the identified areas of inquiry, that does not become the inquiring party's problem, but demonstrates the responding party's failure of duty." *Elliott, supra,* 192 F.R.D. at 504–05. The Fabiano sons should have educated themselves about the issue of attorneys' fees and all of the other 30(b)(6) topics.

Because the Fabiano sons flouted the obligations imposed by Rule 30(b)(6), Fabiano will have to bear the ultimate responsibility. "Producing an unprepared witness is tantamount to a failure to appear at a deposition." *Starlight Int'l v. Herlihy,* 186 F.R.D. 626, 639 (D.Kan., 1999) (citing *Taylor, supra,* 166 F.R.D. at 363); *see also Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.,* 228 F.3d 275, 303 (3 Cir., 2000) ("If the agent [of a corporation] is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.").

## B. Counsel's Behavior During Depositions

■ Scarpa and Black Diamond cite to a litany of actions taken by Mr. O'Connor, Fabiano's counsel, that they assert amounts to inappropriate behavior by counsel during a deposition. For example, Scarpa and Black Diamond state that Mr. O'Connor conferred with the deponents during questioning, left the room with a deponent while a question was pending, conferred with deponents while questions were pending, instructed deponents not to finish answers, suggested to the deponents how they should answer questions, rephrased opposing counsel's questions, instructed witnesses not to answer on grounds other than privilege grounds, asserted the "asked and answered" objection 81 times, engaged in lengthy colloquies on the record, and made *ad hominem* attacks against opposing counsel. Again, the transcripts lend legitimate support to their argument. Mr.

O'Connor, on the other hand, argues that his behavior never constituted "coaching" of the deponents, that he was entitled to tell the witnesses not to speculate, that he was seeking in many instances simply to clarify the questions, that he should not be prevented from making colloquies because he was entitled to make a record of what he wanted to say, and that he has already apologized for the *ad hominem* attacks on opposing counsel.

The transcripts evidence that Mr. O'Connor did engage in all of the behavior of which Scarpa and Black Diamond accuse him. For example, he made improper objections and gave instructions not to answer during the depositions of the Fabiano sons on a number of occasions. (*See, e.g.,* # 34, Ex. K at 10–11, Ex. L at 16, Ex. M at 15–16, 78–79). Mr. O'Connor was not entitled to do so. Rule 30(c) of the Federal Rules of Civil Procedure states that "[e]vidence objected to shall be taken subject to objections." "This provision means that, as a general rule, instructions not to answer questions at a deposition are improper." *Paparelli v. Prudential Ins. Co. of America,* 108 F.R.D. 727, 729 (D.Mass., 1985). "[I]n 1993 the Rule was amended to provide that ... [a] party may instruct a deponent not to answer only when necessary to preserve the privilege, to enforce a limitation on evidence directed by the court, or to present a motion [for protective order]." *Dravo, supra,* 164 F.R.D. at 74. *See also Ethicon Endo–Surgery v. U.S. Surgical Corp.,* 160 F.R.D. 98, 99 (S.D.Ohio, 1995) ("counsel does not have the right to unilaterally decide...issues by instructing the witness not to answer."); *Phinney v. Paulshock,* 181 F.R.D. 185, 207 (D.N.H., 1998), *aff'd* 199 F.3d 1 (1 Cir., 1999) ("If an attorney engages in a pattern of behavior that he either knows or should know is improper, he depletes the reservoir of trust between attorneys, undermines the collegiality necessary to the efficient and amicable resolution of disputes, and unnecessarily requires court supervision of discovery.")

■ Mr. O'Connor also improperly "interpreted" questions for the witnesses, coached them as to how to answer and engaged in lengthy speaking objections and colloquies. (*See, e.g.,* # 34, Ex. K at 16, 59, 60, 65, 101, 103, 111, 152; Ex. L at 30, 117, 157; Ex. M at 78–79). Despite Mr. O'Connor's protestations that he was often seeking just to clarify the questions, the record reveals otherwise. Counsel is not entitled to assist his witnesses during a deposition. "A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and the witness to formulate answers." *Johnson v. Wayne Manor Apartments,* 152 F.R.D. 56, 59 (E.D.Pa., 1993) (citing *Hall v. Clifton Precision,* 150 F.R.D. 525, 528 (E.D.Pa., 1993)); *see also McDonough v. Keniston,* 188 F.R.D. 22, 24 (D.N.H., 1998) ("Speaking objections and coaching objections are simply not permitted in depositions in federal cases."); *Van Pilsum v. Iowa State University of Science and Technology,* 152 F.R.D. 179, 181 (S.D.Iowa, 1993) ("Merely because depositions do not take place in the presence of a judge does not mean lawyers can forget their responsibilities as officers of the court. They should conduct themselves accordingly.").

Mr. O'Connor also conferred with his witnesses during questioning, left the room with a deponent while a question was pending, conferred with deponents while questions were pending and engaged in at least one unpleasant *ad hominem* attack on opposing counsel. (*See, e.g.,* # 34, Ex. K at 32–33, 52, Ex. L at 78–79, Ex. M at 91–92, Ex. N [8] at 83–84). Mr. O'Connor was not entitled to engage in any of these behaviors. *See, e.g., Johnson, supra,* 152 F.R.D. at 59 (defense counsel "improperly objected to the form of the question by either suggesting what he apparently believed to be an appropriate answer to his client or himself testifying."); *Ethicon, supra,* 160 F.R.D. at 99 ("accusations of wrongdoing against witnesses and attorneys have no place in a deposition. Attempts to interrogate opposing counsel dur-

---

**8.** Exhibit N, excerpts from the March 7, 2001 deposition of Miro Cremasco, is actually attached as part of Exhibit K.

ing the course of a deposition are improper."); *Hall, supra,* 150 F.R.D. at 527 ("The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record.").

Again, Mr. O'Connor was not without recourse. If he "felt that the discovery procedures were being conducted in bad faith or abused in any manner, the appropriate action was to present the matter to the court by motion under Rule 30(d)." *Dravo, supra,* 164 F.R.D. at 74.[9]

### C. Sanctions/Protective Order

■ Scarpa and Black Diamond have requested sanctions against Fabiano, as well as a protective order against Mr. O'Connor. I find that the Fabiano sons were not adequately prepared to be designated as 30(b)(6) witnesses for Fabiano. It appears glaringly obvious that they failed to educate themselves about the 30(b)(6) topics about which they would be questioned. Thus, the Motion to Compel is ALLOWED to the extent that Fabiano sons shall be redeposed. "An inadequate Rule 30(b)(6) designation amounts to a refusal or failure to answer a deposition question. Among the other remedies, the Court can require the corporation to re-designate its witnesses and mandate their preparation for re-deposition at the corporation's expense." *Marker, supra,* 125 F.R.D. at 126.

Because it is difficult for me to determine from the record which 30(b)(6) topics were not sufficiently addressed by the Fabiano sons, it is ORDERED that Scarpa and Black Diamond submit a new 30(b)(6) notice of deposition with a list of topics to counsel for Fabiano and to this Court *on or before the close of business on Wednesday, July 11, 2001.* This new notice shall set out the topics upon which Scarpa and Black Diamond intend to depose the Fabiano sons. It shall not repeat topics that were adequately covered during the first set of depositions. The Fabiano sons with the assistance of Mr. O'Connor shall then review all documents reasonably available to them in order to educate themselves as to the 30(b)(6) topics. If, after that review, they believe in good faith that they cannot respond to some of the topics and that there are no other available witnesses who could do so, they shall so notify Scarpa and Black Diamond in writing *on or before the close of business on Friday, July 27, 2001.*

The depositions of the Fabiano sons shall then proceed on the remaining list of 30(b)(6) topics; a date by which the depositions must be completed shall be set at the previously scheduled August 2nd Conference. The matter of whether the costs, including reasonably attorneys' fees incurred by Scarpa and Black Diamond in re-deposing the Fabiano sons, shall be borne, either in whole or in part, by Fabiano is RESERVED.

As to Scarpa and Black Diamond's motion for protective order, I decline, at this time, to issue what amounts to an injunction against any further improper behavior by Fabiano's counsel. The Court, in the within Memorandum and Order, has delineated counsel's responsibilities at a deposition and what behavior is improper. The Court fully expects that Fabiano's counsel will henceforth comport himself in conformity with the Court's rulings. Further, if such conduct persists, there are additional sanctions which may be imposed which are fully adequate to deal with any additional misconduct. The issue of whether, pursuant to Rule 37(a)(4), Fed. R.Civ.P., Scarpa and Black Diamond are to be awarded their reasonable costs, including attorneys' fees, incurred in obtaining the relief sought by their joint motion is RESERVED.

### III. CONCLUSION

It is ORDERED that Scarpa and Black Diamond's Joint Emergency Motion to Compel, Impose Sanctions and Amend the

---

9. Mr. O'Connor did not move for a protective order until he filed his opposition to the instant motion. In the motion for protective order, he asks that this Court prohibit Scarpa and Black Diamond from deposing further the Fabiano sons. While the Court shall not issue a blanket prohibition against redeposition for the reasons stated herein, the Court will consider any limitations which counsel for Fabiano suggests at the August 2nd Conference as per the endorsement on Fabiano's opposition and protective order (# 37) dated May 22, 2001.

Court's Scheduling Order (# 32) be, and the same hereby is, ALLOWED to the extent set forth above.