**CONCERNED CITIZENS OF BELLE HAVEN, et al Plaintiffs,**

v.

**The BELLE HAVEN CLUB, et al. Defendants**

**No. CIV. 3:99CV1467(AHN).**

United States District Court, D. Connecticut.

April 28, 2004.

David N. Rosen, Counselor at Law, P.C., Kevin C. Shea, Stephen M. Ackley–Ortiz, William H. Clendenen, Jr., Clendenen & Shea, New Haven, CT, for Plaintiffs.

Carolyn Roberts Linsey, Owens, Schine & Nicola, Trumbull, CT, Charles W. Pieterse, James C. Riley, John T. Shaban, Margaret A. Triolo, Richard F. Lawler, Whitman, Breed, Abbott & Morgan, Greenwich, CT, Dan E. LaBelle, Stephen P. Fogerty, Halloran & Sage, Westport, CT, for Defendants.

Devereux Chatillon, Sonnenschein, Nath & Rosenthal, New York, NY, Russell D. Dize, Grimes & Battersby, Norwalk, CT, for Movant.

### RULING ON DISCOVERY MOTIONS

FITZSIMMONS, United States Magistrate Judge.

### I. *Introduction*

This ruling addresses two related discovery disputes pending before the court. Defendant Belle Haven Club ("the Club") moves for a protective order to limit the scope of the Club's Rule 30(b)(6) witness [doc. # 163].[1] Plaintiffs move to compel, to determine the sufficiency of responses, and for permission to file more than twenty-five (25) interrogatories [doc. # 185]. The court conducted a telephone conference on February 24, 2004, to discuss the issues presented by the Club's motion. The court heard oral argument on plaintiff's motion on March 9, 2004. For the reasons discussed herein, defendant's motion [doc. # 163] is GRANTED IN PART and DENIED IN PART, and plaintiff's motion [doc. # 185] GRANTED IN PART and DENIED IN PART.

---

1. Rule 30(b)(6) provides that a party may name as a deponent "a public or private corporation or a partnership or association or governmental agency...." Fed.R.Civ.P. 30(b)(6). The organization shall designate one or more officers, directors, or managing agents or other persons who consent to testify on its behalf. *Id.*

*Defendant Belle Haven Club's Motion for Protective Order [doc. # 163]*

Plaintiffs issued a notice of deposition to the Club on December 23, 2003, and issued an amended notice on January 23, 2004. [Defs.' Mem. at 2nd un-numbered page.] At the telephone conference, the parties indicated that they had resolved items 1 and 2. The parties also agreed to revisit any issues that may arise concerning item 5, the Lambert deposition, at a later date. This ruling will address the remaining issues concerning items 3,4, and 6.

■ Item 3 requests that the Club produce a witness with knowledge about "the identity of all persons proposed for Summer, Season, and Active membership in the Club from 1970 to present." [Defs.' Mem. at Ex. B.] Item 4 requests information about the "consideration, treatment, and disposition by the Club of each proposed membership." [*Id.*] The Club objects on the grounds that the information is unduly burdensome, duplicative, and cumulative of previous discovery. The Club argues that it has already produced for deposition numerous present and former members of the Club, members of the Club's Board of Directors, and members of the Admissions Committee, and that much of the information is contained in the records produced or is within the knowledge of these deponents. [*Id.* at 4th un-numbered page.] The Club asserts that it has already responded to the request by writing to the Admissions Committee members, and by voluntarily collecting the materials in their possession and producing them to plaintiffs. The Club asserts that any admissions information from the period before 1996, three years prior to the initiation of the lawsuit, has doubtful relevance to plaintiffs' case. At the telephone conference, the Club agreed to provide admissions information dating back to 1996.

Plaintiffs respond that a 30(b)(6) deposition is necessary because the information already produced by the Club is incomplete.[2] [Pls.'

---

2. For example, plaintiffs allege that the Goichmans were twice proposed for membership and not accepted, but there have been no documents produced showing when or why this occurred.

Mem. at 4.] Secondly, plaintiffs assert that the Club's deposition is necessary in order to verify information contained in a database that plaintiffs have compiled of everyone who moved into Belle Haven from 1974 to 1998. [Pls.' Mem. at Ex. 2.] Plaintiffs served a copy of the database, accompanied by a set of interrogatories and requests to admit the information in the database. Defendants have filed objections to the requests to admit and interrogatories, which are the subject of plaintiffs' motion to compel, discussed in further detail below. Plaintiffs' position is that the most efficient method of confirming whether the data set is accurate is through the requests to admit, interrogatories, and through the Club's deposition, thereby avoiding the need for many micro-depositions of Belle Haven residents. Plaintiffs argue that the historical information is relevant to whether there has been a long standing pattern and practice of discrimination by the Club.

■ In a prior ruling, filed on April 2, 2003 [doc. # 133], the court found that documents relating to the Belle Haven Club's admissions going back to 1980 were relevant to plaintiffs' claims and ordered limited production of responsive documents. The court re-iterates that information pertaining to the Club's historic admissions practices is relevant to plaintiffs' allegation that the Club engaged in a pattern and practice of discrimination. In its ruling, the court invited the parties to revisit the relevance issue if necessary after the initial production request was met. Plaintiffs' current request includes information dating back to 1970, which extends beyond the scope of the court's order. The parties disagree about the existence of an informal agreement to push the cut-off date to one earlier than 1980.

The court has reviewed the database which the plaintiffs seek to have corroborated by the Club's deponent, which contains information about Belle Haven residents dating back to 1974. In light of the relevance of the information from this period, and the incompleteness of information already provided, the court denies in part the Club's motion for a protective order. The court orders the Club's deponent to appear with knowledge about admissions practice from 1974 to the present as requested in items 3 and 4.

■ There is some dispute over what obligation a 30(b)(6) deponent has in preparing for a deposition. A deponent under Rule 30(b)(6) has "an affirmative obligation to educate himself as to the matters regarding the corporation." *Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Company, Inc.*, 201 F.R.D. 33,36 (D.Mass.2001). This includes all matters that are known or reasonably available to the corporation. *Id.* Even if the documents are voluminous and the review of the documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed. *Id.* at 37.

In this case, information about the Club's admissions decisions, and the basis upon which certain applications were accepted or denied, is relevant and discoverable. Although the documentation may be voluminous, and different people affiliated with the Club may hold the information, this does not absolve the Club from its responsibility to produce a witness who can provide information within the Club's knowledge or reasonably available to it.

The court limits the inquiry required of the Club in preparing for the deposition to a review of documents already produced in response to the court's prior order. However, the Club, if necessary, must inquire of past Admissions Committee members and Directors for the relevant information. If, after conducting this inquiry, the Club's deponent is still without responsive information, the Club's deponent should state this on the record along with the steps taken to obtain the information.

■ Item 6 requests the Club's deponent to appear with knowledge about which of the Club's present and past members and applicants for membership were or are Jewish or African–American. The Club objects on the grounds that this information is not reasonably available to the Club because it does not keep track of the religious affiliation of its members or applicants. The Club objects to placing the burden on the defendant to inde-

pendently inquire into an area of such sensitivity as an individual's religion.

The court rules that plaintiffs may ask the Club's deponent about the Club's knowledge of the race and religion of the Club's present and past members and applicants. The plaintiffs may inquire about the source of the Club's knowledge, and may ask if the deponent has any basis to believe that information compiled by plaintiffs about the race or religion of the members or applicants is not accurate. The court, however, grants defendants' motion to the extent that it seeks relief from a requirement to independently investigate the race or religion of present or past members or applicants. In short, the Club, if asked, must respond to questions about the race and religion of members and applicants, but if the Club does not know this information, the Club's deponent may state this, and leave the plaintiffs to their proof. The court reminds the parties that, if an admission that a member or applicant is Jewish or African–American is based upon the personal knowledge of a Club member, this does not necessarily equate to an admission that the Club knew, or acted on, this information.

*Plaintiffs' Motion to Compel [doc. # 185]*

Plaintiffs move to compel responses to their First Set of Interrogatories and Requests to Admit. At the heart of the dispute is the database compiled by plaintiffs (attached to the requests as Exhibit A) containing eight (8) categories of information: the address of the property; the purchasers of the property; the purchase date as shown in Greenwich land records; the year the purchasers became members of the Belle Haven Club; whether the land owner or spouse is (or was) Jewish or African–American; whether the land owner's Club membership was delayed for a year or more or denied; and the year the owner took occupancy of the house (in cases where there was some delay, reportedly due to renovations). Requests 1 and 2 ask for corroboration of the information contained in the database, and are the subject of this ruling. The defendants also raised objections to Requests 3 through 7 and Interrogatories 1 through 9 which were not addressed at oral argument. If specific objections to these items remain after the terms of this ruling have been complied with, the parties may then raise them with the court.

Rule 36 provides that a party may serve a written request for the admission, for the purposes of the pending action only, of "the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact. . . ." Fed. R.Civ.P. 36(a). The purpose of requests for admission under Rule 36 is to "reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact." *T. Rowe Price Small–Cap Fund v. Oppenheimer & Co.*, 174 F.R.D. 38, 43 (S.D.N.Y.1997). Requests for admission are intended to save litigants time and money, which would otherwise have to be spent unnecessarily to prove certain facts at trial, or to establish certain facts through complex and costly discovery procedures, such as interrogatories, depositions, or document requests. *Id.* Rule 36 requires the responding party "to make a reasonable inquiry, a reasonable effort, to secure information that is readily available from persons and documents within the responding party's relative control." *Henry v. Champlain Enters.*, 212 F.R.D. 73, 78 (N.D.N.Y.2003); *T. Rowe Price*, 174 F.R.D. at 43; Moore's Federal Practice, P. 36.11[5][d]. Such reasonable inquiry includes an investigation and inquiry of employees, agents, and others "who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response." *Henry v. Champlain Enters.*, 212 F.R.D. at 78. The inquiry may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties, but not strangers. *Id.* The operative words are "reasonable" and "due diligence." *Id.*

As a threshold matter, defendants contest the relevance of the information dating back approximately thirty (30) years, and claim that a request for thirty (30) years is burdensome on its face. The court has al-

ready addressed the relevance of documents from the period 1974 to the present above. The court disagrees that, for the purposes of a pattern and practice discrimination claim, a thirty (30) year period is burdensome on its face. See *Lumpkin v. Meskill,* 64 F.R.D. 673 (D.Conn.1974).

Defendants contend that none of the information sought by plaintiffs in the request for admission are undisputed factual issues. [Defs.' Mem. At 2nd un-numbered page.] However, the information contained in the database includes such factual information as property address, owners, purchase dates, dates of Club membership, and religious affiliation. To the extent that some of these categories require clarification, the court has addressed this below. To the extent that any of the information is genuinely in dispute, the court agrees that the issue must be addressed at trial. This does not absolve defendants from Rule 33's requirement to take reasonable efforts to admit facts that are not in dispute.

Defendants object to the request to the extent that the records seek information much of which is "equally available" to plaintiffs or derived from public records, asserting that they have no responsibility to do plaintiff's "homework." This objection misses the point of requests for admission, which is to narrow the scope of contested issues at trial. Defendants also contend that the chart is more appropriately introduced at trial. In the court's view, waiting until trial to verify the information would likely result in the expenditure of needless time and expense that the requests are intended to eliminate. *See Lumpkin v. Meskill,* 64 F.R.D. 673.

■ At oral argument, the Belle Haven Land Company ("Land Company") defendants also raised several objections to the requests. Although the Land Company defendants agree that plaintiffs could have sought to corroborate the same information in the form of interrogatories, they maintain that plaintiffs should nevertheless be prevented from doing so with requests for admission. The court does not agree. The

Land Company defendants also argue that such a chart is more appropriately viewed by an expert. If the parties wish to submit the chart to experts for opinion prior to trial, they may do so, but this is not a basis upon which to deny a proper Rule 33 request. Accordingly, the court grants plaintiffs' motion to compel subject to the modifications discussed below.

Columns A and B list the street number and street name of each property. Column C lists the purchasers of the property. Defendants did not raise specific objections to these categories, and the court grants the motion to compel with respect to these items.

■ Column D lists the purchase date of the property. Defendants assert that verifying the date of purchase of the residences is burdensome because the assessor's cards provided by plaintiffs' counsel are "notoriously inaccurate," and since the Club does not maintain records of the date of purchase, the confirmation of such information would require a title search.[3] The court finds that this information is reasonably available to the Club, and disagrees that the effort it would take to refer to public records to confirm or deny the date of purchase of each resident listed on the chart is unreasonably burdensome. If an item in this category is genuinely disputed, this is an issue for trial.

■ Column E lists the year that the owners became Club members. Plaintiffs report that the information provided in this column was derived from the Club's own directory. Defendants object because the date in the directory may reflect when one member of a family was admitted, and not necessarily when, in the case of a husband and wife, they were both admitted. Plaintiffs respond that, for their purposes, the distinction is not material. Defendants must respond to the items in Column E. However, plaintiffs shall clarify that Column E reflects that the date shown is when the first member of the family was admitted. As above, if membership date remains a disputed issue

---

3. Defendants object on the grounds that confirming ownership also requires an initial legal interpretation of the term "resident." Based upon its familiarity with the facts of this case, the court does not see how this is a genuinely contested issue.

after reasonable efforts to confirm or deny, this may be addressed at trial.

■ Category F lists whether individuals are "minority (Jewish or African–American)." Defendants object on the grounds that this is a contested category because the standard for determining whether an individual is Jewish has changed since the commencement of the lawsuit.[4] Defendants also object on the grounds that the information is not reasonably available to the Club because it does not keep track of racial or religious identity as a part of its admissions process. Defendants argue that plaintiffs are seeking to improperly shift the burden of conducting a sensitive inquiry into the religion of Belle Haven residents. Defendants claim that the standard for determining Jewish identity will be determined at trial, and that they cannot take a position with regard to the standard until discovery is complete.

Plaintiffs' position is that, going forward, the standard to determine racial or religious identity in the case is one of "self-identification" (i.e., does the individual identify himself or herself as Jewish?) *See Guardians Asso. of New York City Police Dept., Inc. v. Civil Service Com.*, 630 F.2d 79 (2d Cir.1980). Plaintiffs acknowledge that, in some cases, there may be ambiguity but that, for the purposes of this case, this has not been a chief concern. Essentially, plaintiffs' position is that what is important in this case is how people who are known to be Jewish were treated concerning potential membership in the Club. If someone's Jewish identity were not known, then it is likely to be irrelevant. The court agrees that possible ambiguity about membership in this category is not a significant concern, and is not grounds upon which to deny otherwise permissible discovery.[5] As plaintiff has pointed out, the issue of whether a person is Jewish is relevant and ascertainable, and could be the subject of either numerous depositions, or individual interrogatories. The defendants must respond

to Category F, but they may note if there is any ambiguity in identity that they believe is material. The issue can then be addressed at trial.

■ The issue remains as to what information is reasonably available to the Club concerning the Jewish or African–American identity of members and applicants. The court finds it reasonable to require the Club to inquire of its **present members and the present and past members of the Admissions Committee and Board of Directors** about their knowledge of the racial and religious identity of present and past members and applicants. The court leaves the means of conducting this inquiry for the Club to determine. If the Club is unable to admit or deny after a reasonable inquiry is conducted, the Club may state this, describing the efforts undertaken to verify the information.

Defendants also object to Column G, which defines an application that took more than one year to be "delayed." Defendants assert that memberships can routinely take from one to four years to process and that the question is therefore argumentative. The court agrees. However, the court has ordered defendants to respond to categories D and E. Therefore, the number of years that elapsed between purchase date and acceptance into the club can be deduced by subtracting category D from category E. Plaintiffs may resubmit, and defendants must answer, Category G re-worded to omit any implied reference to a "delay" in membership. With this modification, an admission about the time elapsed between purchase date and acceptance into the Club does not amount to an admission that membership was "delayed."

Column H requests the year the owner took occupancy of the house, and is apparently intended to deal with cases in which there was some delay in occupancy after purchase, commonly due to renovations. The parties did not discuss specific objections to this

---

4. The parties do not agree, but defendants contend that plaintiffs' earlier standard was based upon whether both parents of a person were Jewish, and whether the person had made an overt declaration that he or she is Jewish.

5. The court believes that, in fact, the greater danger in using conflicting definitions concerning racial or religious identity would be if plaintiffs provided the answers to expert witnesses, and the expert witnesses' definition differed from the court's definition.

category. Defendants must respond to this column after conducting a reasonable inquiry based upon parameters outlined above.

■ Finally, defendants argue that the requests violate Rule 33's limitation of parties to twenty-five (25) interrogatories. Defendants' position is that the fourteen (14) interrogatories, including subparts, should be construed as separate interrogatories for each item in the table. Plaintiffs respond that the Advisory Committee notes to the 1993 Amendment to the Rule distinguish between joining requests about "discrete separate subjects" into a single interrogatory, which is improper, from the permissible practice of using a single interrogatory to ask for information about all "communications of a particular type [which] should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each communication." The court agrees with this interpretation of the Rule, and finds that plaintiffs are not required to seek leave to file additional interrogatories to cover the requested discovery.

The parties shall confer immediately to schedule the Club's deposition. The timeline for completing discovery in this case will be discussed at a conference to be scheduled by the court.

## V. *Conclusion*

For the reasons stated above, defendant's motion for protective order is [**doc. # 163**] is **GRANTED IN PART** and **DENIED IN PART**, and plaintiff's motion to compel [**doc. # 185**] is **GRANTED IN PART** and **DE-NIED IN PART.**

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.